

**U.S. Department of Justice**

United States Attorney

*District of Columbia*

*Judiciary Center*
*555 Fourth St. N.W.*
*Washington, D.C. 20001*

November 18, 2005
Final

**FILED**

**DEC 1 3 2005**

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

David Bos, Esquire
Federal Public Defender Service
625 Indiana Avenue, N.W.
Suite 550
Washington, D.C. 20004

    Re:    <u>United States</u> v. <u>Joseph Dennis Akpan</u>
            Magistrate Case No. 05-0454M-01

Dear Mr. Bos:

    This letter sets forth the plea agreement this Office is willing to enter into with your client, Mr. Joseph Dennis Akpan. The offer expires on ***November 22, 2005***. If your client accepts the terms and conditions of this offer, please have your client execute this document in the space provided below and return it to me. Upon our receipt of the executed document this letter, incorporating the factual proffer, will become the plea agreement. The terms of the agreement are as follows:

    1. **<u>Charges</u>**. Your client agrees to admit guilt and enter a plea of guilty to one count of violating 18 U.S.C. § 472, Uttering Counterfeit U.S. Currency.

    2. **<u>Potential penalties, assessments, and restitution.</u>** Your client understands that pursuant to 18 U.S.C. § 472, the federal charge carries a maximum penalty of 20 years imprisonment, a maximum fine of $ 250,000 under 18 U.S.C. § 3571(3), and a maximum period of supervised release of not more than three years under 18 U.S.C. § 3583(b)(2). In addition, your client agrees to pay a special assessment of $100 to the Clerk of the United States District Court prior to the date of sentencing. <u>See also</u> 18 U.S.C. § 3013. Your client understands that the sentence in this case will be determined by the Court, guided by factors listed in 18 U.S.C. §§ 3551 <u>et seq.</u>, and after consulting with and taking into account the United States Sentencing Guidelines.

3. ~~**Release/Detention pending sentencing.** Your client agrees not to object to the government's recommendation to the Court at the time of the plea of guilty in this case that, pursuant to 18 U.S.C. § 3143, your client be detained without bond pending your client's sentencing in this case.~~ *HAP*

4. **Waiver of constitutional and statutory rights.** Your client understands that by pleading guilty in this case, your client agrees to waive certain rights afforded by the Constitution of the United States and/or by statute, including: the right to be indicted by a grand jury; the right to plead not guilty; and the right to a jury trial, and (where relevant) the right to be tried in the district where the offenses were committed. At a jury trial, your client would have the right to be represented by counsel, to confront and cross-examine witnesses against your client, to compel witnesses to appear to testify and present other evidence on your client's behalf, and to choose whether to testify. If your client chose not to testify at a jury trial, your client would have the right to have the jury instructed that your client's failure to testify could not be held against your client. Your client would further have the right to have the jury instructed that your client is presumed innocent until proven guilty, and that the burden would be on the United States to prove your client's guilt beyond a reasonable doubt. If your client were found guilty after a trial, your client would have the right to appeal the conviction.

Your client understands that the Fifth Amendment to the Constitution of the United States protects your client from the use of self-incriminating statements in a criminal prosecution. By entering this plea of guilty, your client knowingly and voluntarily waives or gives up this right against self-incrimination.

Your client understands that as part of the entry of this guilty plea, your client specifically waives any rights to a speedy trial or sentence under the Constitution and/or the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*

5. **Sentencing Guidelines.** Your client and this Office agree that the guiding range applicable to the offense to which your client is pleading guilty is set forth in Section 2B5.1 of the United States Sentencing Guidelines (U.S.S.G.). The parties agree that the base level for the offense to which the defendant will plead guilty, Uttering Counterfeit U.S. Obligations or Securities, is **9**. The parties agree that there are no relevant adjustments under 2B5.1. Accordingly, the parties agree that your client's offense level is **9**.

**If the defendant accepts this plea offer by *notification to the Government on or before November 22, 2005 and pleads guilty on December 13, 2005*,** and continues to accept responsibility for his criminal conduct and to assist authorities in the investigation and prosecution of his criminal conduct, commits no other criminal acts, and complies with the terms and conditions of this agreement, then the United States will not oppose a **2** level reduction for acceptance of responsibility, resulting in a final adjusted offense level of **7**, under Sentencing Guideline Section 3E1.1(a). If those conditions are satisfied, then the United States and your client agree not to seek any upward or downward departure or a sentence outside the Guideline

-2-

range applicable to your client based upon the Offense level 7 (0-6 month incarceration) and the appropriate Criminal History Category. Defendant Akpan understands that the Judge is not bound in any way by the parties' agreement to recommend a sentence and a fine consistent with the U.S.S.G. range.

6. **Limited Waiver of Appeal.** Your client is aware that federal law, specifically 18 U.S.C. § 3742, affords him the right to appeal his sentence. The defendant is aware that any calculation of the sentencing ranges under the U.S. Sentencing Guidelines or expectation is not binding on the Judge. Knowing that, the defendant waives the right to appeal his sentence or the manner in which it was determined pursuant to 18 U.S.C. § 3742 except to the extent that the Court sentences the defendant to a period of imprisonment longer than the statutory maximum. Realizing the uncertainty in estimating what sentence the Judge will ultimately impose, the defendant knowingly and willingly waives his right to appeal the sentence, to the extent noted above, in exchange for the concessions made by the United States in this agreement. In agreeing to this waiver, your client is aware that his sentence has not yet been determined by the Court. Further your client reserves his right to make a collateral attack upon his sentence pursuant to 28 U.S.C.§2255 if new and currently unavailable information becomes known to him.

7. **Reservation of allocution.** Your client understands that the United States reserves its full right of allocution for purposes of sentencing in this matter, consistent with this agreement. In particular, the United States reserves its right to recommend the specific period of incarceration *and a fine up to the maximum allowable by law.* The United States reserves the right to describe fully, both orally and in writing, to the sentencing judge the nature and seriousness of your client's misconduct, including misconduct not described in the charge to which your client is pleading guilty. The United States also reserves the right to inform the presentence report writer and the Court of any relevant facts, to dispute any factual inaccuracies in the presentence report, and to contest any matters with regard to sentencings.

Your client also understands that the United States retains its full right of allocution in connection with any post-sentence motion which may be filed in this matter and/or any proceeding(s) before the Bureau of Prisons or in any other post-sentence litigation. The United States reserves the right to appeal the sentence in this case.

8. **Deportation.** The defendant understands that this criminal prosecution and agreement are completely unrelated to his applications for relief from removal, deportation, or exclusion, either written or oral, or the prosecution of any pending applications, before any federal court, the Board of Immigration Appeals, an immigration judge, or the Department of Homeland Security, U.S. Immigration and Customs. In addition, Defendant Akpan understands and agrees that no change in his immigration status or resolution of his immigration applications shall be grounds for your client to file a motion to vacate this plea agreement or withdraw his guilty plea.

9. **Prosecution by other agencies/jurisdictions.** This agreement only binds the United States Attorney's Offices for the District of Columbia. It does not bind any other United States

Attorney's Office or any other office or agency of the United States government, including, but not limited to, the Tax Division of the United States Department of Justice, the Internal Revenue Service of the United States Department of the Treasury; the Immigration and Naturalization Service of the Department of Justice; or any state or local prosecutor. These individuals, and agencies remain free to prosecute your client for any offense(s) committed within their respective jurisdictions. If your client is not a citizen of the United States, your client understands and acknowledges that the guilty plea in this case will or might subject your client to detention, deportation and other sanctions at the direction of the Immigration and Customs Enforcement.

10. **Breach of agreement.** Your client understands and agrees that if your client fails specifically to perform or to fulfill completely each and every one of your client's obligations under this plea agreement, or commits any further crimes, your client will have breached this plea agreement. In the event of such a breach, (a) the United States will be free from it obligations under the agreement; (b) your client will not have the right to withdraw the guilty plea; (c) your client shall be fully subject to criminal prosecution for any other crimes which your client has committed or might commit, if any, including perjury and obstruction of justice; and (d) the United States will be free to use against your client, directly and indirectly, in any criminal or civil proceeding all statements made by your client and any of the information or materials provided by your client, including such statements, information and materials provided pursuant to this agreement or during the courts of any debriefings conducted in anticipation of, or after entry of this agreement, including your client's statements made during proceedings before the Court pursuant to Fed. R. Crim. P. 11.

Your client acknowledges discussing with you Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410, rules which ordinarily limit the admissibility of statements made by a defendant in the course of plea discussions or plea proceedings if a guilty plea is later withdrawn. Your client knowingly and voluntarily waives the rights which arise under these rules. As a result of this waiver, your client understands and agrees that any statements which are made in the course of your client's guilty plea will be admissible against your client for any purpose in any criminal or civil proceeding if your client breaches this agreement or your client's guilty plea is subsequently withdrawn. Moreover, in the event your client's guilty plea is withdrawn, your client agrees that the United States will be free to use against your client in any criminal or civil proceeding any statements made during the course of any debriefing conducted in this case, regardless of whether those debriefings were previously covered by an "off the record" agreement by the parties.

11. **No other agreements.** No other agreements, promises, understandings, or representations have been made by the parties other than those contained in writing herein, nor will any such agreements, promises, understandings, or representations be made unless committed to writing and signed by your client, counsel, and an Assistant United States Attorney for the District of Columbia, or made by the parties on the record before the Court. If your client

agrees to the conditions set forth in this letter, both your client and you should sign the original in the spaces provided below, initial every page of this agreement, and return the executed plea agreement to me. The original of this plea agreement will be filed with the Court.

Sincerely,

*[signature]*
KENNETH L. WAINSTEIN
United States Attorney for
  the District of Columbia

*[signature]*
Heidi M. Pasichow
Assistant United States Attorney
D.C. Bar # 370686
United States Attorney's Office
555 4th Street, N.W. Room 11-445
Washington, D.C. 20530
202-514-7533

Defendant's Acceptance

I have read or have had read to me this plea agreement and carefully reviewed every part of it with my attorney. I am fully satisfied with the legal services provided by my attorney in connection with this plea agreement and all matters relating to it. I fully understand this plea agreement and voluntarily agree to it. No threats have been made to me, nor am I under the influence of anything that could impede my ability to understand this plea agreement fully. No agreements, promises, understandings, or representations have been made with, to, or for me other than those set forth above. I am pleading guilty to the crime of Uttering Counterfeit U.S. Obligations or Securities because I am guilty of that crime.

12-13-05
Date

Defendant Joseph Dennis Akpan

Attorney's Acceptance

I am the defendant's attorney. I have reviewed every part of this plea agreement with him. It accurately and completely sets forth the entire agreement between defendant and the office representing of the United States Attorneys for the District of Columbia.

12-13-05
Date

David Bos
Counsel for Defendant

-6-

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. |
| | : | |
| v. | : | MAGISTRATE NO. 05-0454M-01 (CR) |
| | : | |
| JOSEPH DENNIS AKPAN, | : | VIOLATION: 18 U.S.C. §472 |
| Defendant. | : | (Uttering Counterfeit Obligations and |
| | : | Securities) |

## INFORMATION

The United States Attorney charges:

### COUNT ONE

On or between August 6 through August 7, 2005, in the District of Columbia, the defendant, JOSEPH DENNIS AKPAN, with intent to defraud, did pass and utter and attempted to pass and utter to another and kept in his possession falsely made, forged and counterfeited obligations of the United States, that are, Federal Reserve Notes in the amount of $1800.00 in denominations of one hundred dollars, Series of 2003, containing wither Serial Nos. DE58718775A/E5 and/or DE58718758A/E5, which he then knew to be falsely made, forged and counterfeited.

**(Uttering Counterfeit Obligations and Securities, in violation of 18 U.S.C. §472)**

KENNETH L. WAINSTEIN
United States Attorney
for the District of Columbia
Bar No. 451-058

By: _____
Heidi M. Pasichow
D.C. Bar # 370-686
Assistant United States Attorney
Federal Major Crimes Section
555 4th Street, NW
Washington, D.C. 20530
(202) 514-7533

# FACTUAL PROFFER

**Joseph Dennis Akpan, DOB:** _____, SSN:

The following factual proffer incorporated as a part of the plea agreement between the defendant and the United States provides the factual basis that defendant committed the offense of Uttering Counterfeit Obligations and Securities in violation of 18 USC § 472.

On August 7, 2005, at approximately 12:35 a.m., U.S. Secret Service Agents were contacted by a representative of the Metropolitan Police Department. They were advised that an individual was being detained because he passed a counterfeit $100 Federal Reserve Note (hereafter "FRN") at H2O Restaurant, 800 Water Street, SW, Washington, DC. U.S. Secret Service Special Agents responded to H2O to meet a Metropolitan Police Officer who informed them that an individual identified as the defendant, Mr. Joseph Dennis Akpan, attempted to pass one counterfeit $100 FRN to the cashier to pay the $20 cover charge at approximately 11:56 p.m on August 6, 2005. The cashier advised Mr. Akpan that the money he gave her was fake. Mr. Akpan immediately fled the restaurant leaving the one counterfeit bill with the cashier. The Metropolitan Police Department Officer was told that Mr. Akpan ran out of the restaurant and attempted to jump over a security barrier to evade the police. Mr. Akpan was apprehended by security and found to be in possession of seventeen (17) $100 counterfeit FRNs.

U.S. Secret Service Special Agents transported Mr. Akpan to their Washington Field Office for an interview. Mr. Akpan was advised of his <u>Miranda</u> Rights and waived them. He admitted to knowingly attempting to pass the counterfeit $100 FRN as genuine currency. Mr. Akpan further advised that he purchased $2000 in counterfeit $100 FRNs in exchange for $1000 in genuine U.S. currency at the corner of Pennsylvania Avenue and North Avenue in Baltimore, Maryland. He refused to provide any further information about the seller's identity. Mr. Akpan further claimed that after review of the counterfeit $100 FRNs he purchased he noticed that he had only received 18 $100 counterfeit FRNs and not 20 $100 counterfeit FRNs, thereby implying that he had only attempted to pass one $100 counterfeit FRN before being apprehended.

A visual examination of the subject counterfeit $100 FRN recovered from Mr. Akan revealed that it was printed using inkjet technology on a bleached genuine $5 FRN.